The Judge, at Special Term, accompanied his decision, with the following opinion:
Slosson, J.
By the terms of the contract the house was to be fully completed before the 1st day of May, 1857.
When completely finished, the plaintiff was to have a deed.
If he neglected to complete it, or neglected to prosecute the work for ten days, the defendant was entitled to insist on the immediate repayment of all the advances he should have made, with interest, and was authorized, in such case, to sell, at public or private sale, all the estate, right, title and interest of the plaintiff in the premises, on giving ten days’ notice in writing of his *437 intention so to do, the proceeds of sale to be applied to the defendant’s reimbursements, and the surplus, if any, to be paid to the plaintiff.
The plaintiff suspended work on the house in the latter part of February, 1857.
On the 15th day of April the defendant gave him a written notice, that if, within ten days from that date, he did not repay the moneys he had advanced on the contract, with interest and charges, he would, after the expiration of the ten days, sell all his right, title and interest in the contract at public auction.
The plaintiff having done nothing, the defendant publicly advertised the property for sale at auction, by an advertisement, admitted to have been published in the public papers for six or seven days.
At the sale, the defendant became the purchaser for §10.
On the first day of June, 1858, the defendant contracted to sell the premises to Mee, and to advance him §5,000 towards the erection of a house thereon, upon the completion of which he was to give him a deed of the premises. Mee thereupon commenced the erection of the house, completing what plaintiff had failed to do, with some alterations, and has received a deed of the premises, and is in possession.
This action for specific performance was commenced on the 16th day of June, after the contract with Mee was executed.
The Court cannot now enforce the original contract with the plaintiff. The plaintiff wholly neglected to proceed with the work after stopping it in February, and the only excuse he makes is, that the severity of the winter rendered it unfit to proceed until the ensuing spring.
I think, under the pleadings, this should have been proved.
Even after the notice in April, the plaintiff did not offer to proceed with the work.
The parties, by their own contract, prescribed the mode in which, the plaintiff’s interest was to be foreclosed in case of his default.
This mode was pursued.
There is no proof, it is true, that notice of the day of sale was given to the plaintiff; but I do not think the contract called for it. After ten days’ notice of the intention to sell, the *438 defendant might, by the terms of the contract, have sold at private sale.
E. P. Cowles, for appellant.
The plaintiff had failed to perform his contract.
1st. By neglecting to complete the house “prior to the 1st day of May, 1857.”
2d. By allowing the “diligent prosecution of the work” on the premises to be suspended for more than ten days.
It was, in fact, suspended from and after February, 1857, and was never afterward resumed.
3d. By abandoning his contract altogether. And, therefore,
. II. The contingency provided for in the contract having happened, the defendant was authorized to sell all of the right, title and interest of the plaintiff in the premises.
Such sale could be either a public or private one.
The defendant pursued the remedy given him by contract.
1st. He gave the notice which the contract required.
And then caused the premises to be sold at public auction.
Of this the plaintiff had notice.
2d. The defendant sold at private sale to John B. Mee.
We submit that by one, if not by both, of these sales, the plaintiff was divested of any interest he might have in the premises.
But I have great doubt whether he could himself become the purchaser. • The sale was under the authority in the contract; and it is a rule that an agent to sell cannot become the buyer.
The plaintiff had no equity to enforce the contract; but I do not think it equitable to allow this purchase to foreclose the plaintiff from all right to an account;
I think exact justice will be done both parties by denying the prayer for specific performance, but decreeing an account.
Let an account, therefore, be taken of the moneys expended by the plaintiff, and thpse advanced by the defendant, in the éréction of the house, and, if any balance is found due the plaintiff, the defendant must pay it.
Question of costs reserved.
(4 Kent R., 475; Story on Agency, § 211; 1 John. Ch. R., 370; 4 id., 559; 13 John., 359; 21 Barb., 381; 4 Seld., 216.) .
*439 The Court below held the reverse of this; but the defendant respectfully insists that —
ITT. The first sale made at public auction, on the 12th May, 1857, at which the defendant himself became the purchaser, was a valid sale, made in strict compliance with the terms of the contract, and one which the law will uphold.
The relation of the plaintiff and defendant was not that of, nor was it analogous to that of, principal and agent, but was that of mortgagor and mortgagee.
The defendant might, therefore, at the public sale provided for in the contract, become the purchaser.
In foreclosure sales by advertisement, under the statute, it is expressly provided that the mortgagee may become the purchaser. (2 R. S., p. 546, § 7.) And this case comes fairly within that rule.
Besides, by the terms of this contract, by the nature of the case itself, it is to be presumed that the parties contemplated that either one might buy at public sale.
How, upon such sale, was the plaintiff to protect himself unless he was permitted to bid?
The sale was to be of all the “ estate, right, title and interest ” of the plaintiff in the premises.
All which the plaintiff could realize upon such sale was, consequently, the balance left after the payment of the five thousand dollars, and defendant’s advances, with interest.
So, too, unless the defendant could bid, he would hazard the loss of all his advances. He would realize such loss, if a stranger should purchase for a sum less than what he had advanced. Against such loss, the defendant could only protect himself by his bids at the sale.
If either party could bid, he could buy, for the right to one implies the right to the other also.
If these views are correct, they dispose of the case.
But if the Court shall rule otherwise, then we submit that —
IV”. The private sale made to John B. Mee, on the 1st day of June, 1858, was a valid sale under the contract.
The work on the building, at the time of this sale, on the 1st June, 1858, had been suspended for about eighteen months, for *440 the work was abandoned in February, 1857, and had never been resumed.
The contract provided for a sale either public or private.
The entire premises were sold to Mee, and this sale, if plaintiff then had any rights under the contract, disposed of them all.
The sale was for six thousand five hundred dollars.
If plaintiff had any right at this time, it was to deduct from this six thousand five hundred dollars the five thousand dollars and interest, and defendant’s advances and interest, and receive the balance.
V. The plaintiff cannot properly be allowed the amount awarded to him against the defendant.
The contract remains unperformed by the plaintiff.
He abandoned all work under it in February, 1857.
In April, 1857, defendant gave notice of his contemplated sale.
The plaintiff did not then either proceed, or offer to proceed, with the work.
The sale took place on the 12th May.
The plaintiff never afterwards made any attempt to proceed with the work.
Matters remained in statu quo from February, 1857, down to June, 1858, plaintiff doing nothing, and, except as above stated, not offering to do anything.
The property meantime was suffering .from the action of the elements upon an unprotected half-finished house.
The terms of the contract had therefore been violated by the plaintiff in these particulars.
1st. By the contract he was not to suspend the construction of the building at any time, for a period of ten days.
This covenant he failed to keep.
2d. He was to complete the building prior to the 1st June, 1857.
3d. He abandoned his contract altogether.
■ Now, what was the effect of this violation of the contract, as regards the building itself?
The Court found that by reason of being left in an unprotected state, damage was done to the building to over $1,000.
This damage was the direct result of the plaintiff’s violation of his contract.
*441 But by the principle on which the judgment is based, all this loss is made to fall upon the defendant.
We submit that this is not equitable.
We submit that the damage caused by this neglect should be chargeable to the plaintiff and not made to fall on the defendant.
If neither of those sales was legal, then upon no principle can plaintiff be entitled to a recovery, unless it be upon the ground that defendant, by going into possession, has made himself liable to account the same as if he had legally sold plaintiff’s interest in the premises, in the manner provided for by the contract.
The true rule for determining the extent, in such case, of the defendant’s liability, would be to determine the actual value of the plaintiff’s “estate, right, title and interest in the premises” at the date of the defendant’s actual reentry—and from that sum to deduct the amount due by plaintiff to defendant—giving the plaintiff such balance, if any.
The judgment should be reversed.
W. H. Northrup, for respondent.
I. Hogan was to sell the lot to Chase for $5,000, and make him certain advances. He claims in his answer to have paid him $850, and alleges that he sold (and, of course, as the agent of Chase) the house and lot to Mee for $6,500, which with the $5,000 advanced to him for the erection of the house on said lot of land, of the value of from $12,000 to $15,000, to which add value of lot, $5,000, and there will be due Chase more than he has recovered judgment for, without allowing Chase any credit for the $3,000, expended by him.
H. Chase has never been deprived of his title by notice and sale.
I. The notice contemplated by the contract was never given to Chase. It requires Chase to repay, while the contract only authorizes notice of ten days to proceed with work, and in default thereof to sell and account to plaintiff.
The notice dated 15th April, is, that ten days from that date, Hogan would sell, &c.; but the proof shows it was served on 17th April, being only eight days’ notice.
2. The property was bid in by Hogan, who acted as Chase’s agent, and hence Hogan acquired no title by the sale, even if it *442 had been regular. (Dobson v. Racey, 4 Seld., 216; Story on Agency, § 211, and authorities cited.)
3. But if Hogan acquired any title by sale, by himself to himself, it was only as trustee for Chase. Lees v Nuttall; (1 Russ. & Myl. 53;) Willard’s Eq. Jur., 603, “No party when he has a duty to perform in relation to property, can purchase it and hold it for his own property.” (Van Eppsv. Van Epps, 9 Paige, 241; Hawley v. Cramer, 4 Cow., 717; 4 Kent’s Com., 438.)
III. But the defendant demands in his prayer to his answer, that “ the plaintiff be only entitled to any amount expended before such sale,” &c.; that is, the judgment, and the defendant cannot complain, as he has all he has asked for.
Robertson, J.
The Court, at Special Term, held that the plaintiff was not entitled to specific performance of the contract in controversy, because he wholly neglected to proceed with the work after stopping it in February, 1857; in which view I fully coincide. But it also ordered an account to be taken of the moneys expended on the premises by the plaintiff, and the moneys advanced to him by the defendant, the only reason assigned for which is, that it was not equitable to allow the sale by the defendant to bar such account. This substantially converts this action into one for work and labor, and money expended with a counterclaim by the defendant for moneys advanced, which is utterly at variance with any form or direction given to the action by the complaint. The relief demanded, although somewhat novel and peculiar, does not include specific performance, to which probably the plaintiff did not consider himself entitled any more than the Court at Special Term did. In his demand for relief, the plaintiff a.sks to be permitted to proceed with the contract, that is, the building of the house, for nonperformance of which within the time limited he shows no excuse ; he further prays, that it may be considered in full force and effect, and that his own interest in it may be sold, and the proceeds applied as the Court may direct; also that the defendant shall not have an assignment of the plaintiff’s interest in the contract, because he has never asked for it, and finally for any relief to which he may be entitled. The complaint does.not aver any expenditure on the premises by the plaintiff, other than *443 that which was declared by the Court not to be sufficient to entitle the plaintiff to a specific performance, because not continued' to the completion of the building; and it is silent as to any sale of the premises; the allegations in the complaint and its prayer, clearly make the action one in equity, yet it is changed to one at common law, and the defendants denied a trial by jury. Saltus v. Genin. (3 Bosw., 264.)
I have not been able to find any equity for indemnifying the plaintiff for his expenditure. It was held by the learned Judge, at Special Term, that he showed no legal excuse for failing to complete the building by the day by which he had contracted to finish it on the land, to a conveyance of which he was entitled upon such completion, and that in consequence of such failure he was not entitled to such conveyance; and I can see no reason why he is entitled to be paid for his work, any more than to have such conveyance. He chose to run the risk of putting his work on another man’s land on the chance of getting a conveyance, if he completed a building; his work and materials became part of the freehold; and in such case there would even be no consideration for a promise to pay him, but such promise was never made. It would be a clever mode for builders, to get paid by the owners of land for as much work as they choose to perform towards erecting a building on the land, under pretense of purchasing it, they even borrowing money of the owners to buy the materials, and abandoning the work at any stage. For all that I can see, the owner was debarred, under the account in this case, from even a claim for damages against the plaintiff, (which is at the best unsatisfactory,) for preventing the sale of thé land for six months, and encumbering it with the ruins of a partially finished edifice. I cannot understand how such a right could be made to depend upon the sale of the land by the defendant, unless the Court could go still further and adjudge that the plaintiff should be put in possession of the land and retain it until he chose to finish his work.
The Court, at Special Term, seems to have put the plaintiff’s right to recover upon the ground that the contract had not been terminated, or the plaintiff’s interest or right foreclosed by the sale to the defendant, or to Mee, and to have tacitly conceded that if it had been, the plaintiff would have had no right to *444 recover for Ms work and money; as I have not been able to discover the basis of that right, wMch was not furnished in the opinion, I cannot very well see how the termination of the contract could affect it. But it is evident that the Court considered the contract as still running between the parties for some purposes, but not for others; it may be that it looked upon the sales by the defendant as a voluntary hindrance by him to the completion of the contract by the plaintiff, and as such, gave the latter a right to recover for what he had done; but such hindrance never was interposed until after the work ought to have been finished according to the contract, and the Court held the failure to go on with it debarred the plaintiff from a right to a specific performance. Surely, if the plaintiff is not entitled to a specific performance because he has not performed his part of the contract, and such non-performance has not arisen from any obstacles of the defendant, he is not entitled to recover for what he has done in part performance.
But the plaintiff has debarred himself from any compensation for the work he did, for the same reason as he excluded himself from a specific performance. The building of the house by the time fixed, was part of the essence of the contract: there can be no distinction between tMs and any other contract for building by a fixed time. The plaintiff agreed to take a conveyance of the land and build the house for $5,000, and give a mortgage when the house was bMlt both for that sum and any further loan made him by the defendant. On such a mixed contract, is time of no consequence ? Is the defendant to be deprived of the use of his land during the period set apart for building, and left at the end of that time with his land just as it was, while the plaintiff is to be at liberty at any time to come in and offer to do the work? All the cases in which time has been held to be immaterial have been those where nothing appeared on the face of the contract to show that it was otherwise; and no authority has been furnished, nor have I been able to find any, in which, on such a contract, where the objects are twofold—to sell the land, have it improved in a special mode by a certain day, then lend the purchase-money and additional advances upon the security of such land so improved—there is no distinction between it and a failure to perform in any other particular; that time is to be *445 disregarded. If any abandonment by the plaintiff of the contract was necessary to preclude him from any claim under it, his relinquishment of possession of the land, and neglect to take any steps in the matter until fourteen months after the time for building had expired, was sufficient evidence of it.
The learned Judge, at Special Term, seems to have considered the mode pointed out in the contract as the only one for foreclosing the plaintiff's interest, that is, if this be equivalent to terminating his rights. I cannot but think the view erroneous. That mode is not declared expressly to exclude all others, and was evidently intended merely to shorten the time during which the defendant was to be kept out of possession. It contemplates that the house was not to be built during the time it was applicable, and that it was not intended to procure reimbursement of the whole advances, but only part. As a separate remedy, it clearly could not affect the termination of the plaintiff’s rights by his neglect to perform the contract on his part within the time fixed; and there is no inconsistency in construing it as cumulative. If the defendant wanted the work to go on, or be reimbursed his advances before the time fixed for finishing it and giving the mortgage, he might desire a summary method of being reimbursed. It is not to be assumed that he would be able to obtain price enough for the land and improvements over and above the purchase-money to reimburse his advances, or that the parties contemplated that he must, or else leave the contract forever open until he did. It was at the plaintiff’s risk, as in every similar building contract, if he did his work partially, and lost the benefit of it by not completing it within the time fixed, when not hindered by the other party. The legal consequences of not performing the condition precedent must follow, without the necessity of taking any steps to foreclose the delinquent vendee.
In my view of this case, the sales by the defendant were of his own property divested of any claim of the plaintiff after the interest of the latter had expired by his own fault, and even after notice of his neglect; which renders it unnecessary to examine the validity of those sales, if they were necessary to terminate his interest. But, in any event, the judgment at Special Term is incorrect, because, if the contract was still executory, the plaintiff was bound to have tendered performance and averred it *446 in his complaint, or alleged some reason for non-performance, which he has not done; without which, no foundation is laid for any action. I do not see why, upon the facts established in thisj action, the defendant would not be entitled to recover damages against the plaintiff for non-performance of his contract, in not completing the building in time. What the amount of those damages would be, is immaterial to the question; but I cannot conceive the right of the plaintiff to recover for work partially performed, when he is made liable for not completing it, unless expressly provided for in the agreement.
If this action can be maintained in any shape, it is clear the defendant should be allowed, in diminution of the plaintiff’s claim, for the damage to the building by the weather, unless the plaintiff be confined to a recovery apon a quantum meruit
The judgment should be reversed, with costs to the appellant to abide the event, and a new trial take place.
Bosworth, Ch. J.
The opinion accompanying the decision made at Special Term, is to the effect that a valid sale of the plaintiff’s interest in the premises could be made at auction, and that the notice of such sale which was given, satisfied the contract between the parties in that behalf. The only reason assigned or suggested, why the sale did not conclude the plaintiff, is, that inasmuch as the sale was made under an authority created by the contract, the defendant in making such sale was the agent of the plaintiff, and therefore could not become a purchaser.
, If all the conclusions, thus stated, (except the last) be correct, then the only question to be considered, is the single one, last adverted to.
The relations between these parties, created by the contract in question, are essentially different from those, which, in the cases cited, were held to constitute that of principal and agent, between the purchaser and the party seeking to avoid the purchase on the ground that it had been made by the agent, in his own name and on his own account.
In Dobson v. Racey et al., (4 Seld., 216,) Dobson the mortgagor executed to Eacey the mortgagee, a power of attorney authorizing him as attorney of Dobson to sell and convey in fee *447 the mortgaged premises for such consideration as he might think proper, and after retaining sufficient to satisfy the mortgage, to pay one-half of the net surplus to Dobson’s wife.
In making a sale under that power of attorney, Racey sold the property of bis principal; and property the fee of which was in the principal, and in conveying it acted in temrs as well as in-fact and law as the attorney of Dobson. It was none the less the case of a transaction between principal and agent, because Racey had an incumbrance upon the property, the amount of which he was authorized, by the power of attorney, to retain from the proceeds of the sale.
In the present case, Hogan owned the lot, and the fee was in him. An executory contract for the sale and conveyance of it, existed between the plaintiff and the defendant. The plaintiff, could not acquire a right to a conveyance of it, except by performing the contract on his part. That required that the house which he agreed to erect on it, “ should be fully completed prior to the 1st- of May, 1857.” When that time had arrived the roof was not on, and nothing had been done on the building subsequent to the latter part of February previous. Mo fact is found or was proved, showing any apology, much less a justification, for this marked failure of the plaintiff to perform on his part. Although served on the 17th of April with a notice dated the 15th, that all his “ estate, right, title and interest in the contract” would be sold “after ten days from the present date,” unless he repaid to the defendant, before the expiration of said ten days, all the money which the latter had advanced on the contract; the plaintiff did not offer to proceed with the work.
By the express terms of the contract; it was agreed, that if the prosecution of the work of erecting the house should, at any time, “ be suspended for ten days, then and in such case, said Hogan shall have the right to insist on the immediate repayment of all the advances he shall have made, together with the interest thereon.” There was a suspension of the work, for nearly two months prior to the 17th of April, 1857, and on that day Hogan required that the money advanced should be repaid within eight days thereafter. Looking at these provisions alone, Hogan had a right to treat the contract as abandoned by the plaintiff; and *448 the latter would have no right without Hogan’s consent, to act further under the contract, or to require Hogan to make further advances.
But the contract contemplates, that even in that event, the plaintiff should have all the benefits which could be realized from a fair, Iona fide, private sale of the property, or from a sale of it at public auction, and provides that Hogan shall give to Chase “ten days’ notice in writing of his intention to make such sale.”
In making such a sale, Hogan would not make a sale of property which, either at law or in equity, belonged to Chase. The fee of the property was in him. The whole equitable interest was his to the extent of the price agreed to be paid for the lot, and to the extent of his advances made thereon. The only equitable interest which Chase had, was in any surplus that might arise from such sale, after satisfying out of the proceeds thereof, the amount of Hogan’s interest.
If Hogan could not become a purchaser at an auction sale; the consequence would be, that he might not be able to make any sale, although the contract was in all respects a favorable one for Chase.
The building may have been so negligently constructed, and have been so much injured by an inexcusable exposure of its walls, (unprotected,) to the storms of inclement weather of the winter season, that for this reason alone no bidder could be found who would bid the amount due to Hogan.
He, probably, could not sell it to himself at private sale. That evidently was not within the contemplation of the parties. If no one could be found who would buy it, either at private or public sale, at a sum sufficient to pay the amount due to Hogan; then, contrary to the manifest intent of the parties, it would be impossible to terminate the interest of Chase, in the manner in which the parties agreed it might be; if it be law, that Hogan could not become a purchaser. At the auction sale, after the property had been publicly advertised to be sold for six successive days in two public newspapers, no bidder could be found who would take the property and pay the amount due to Hogan, as may be inferred, from the fact that he bid only $10, and no one *449 bid higher. It was sold to Mee on the 1st of June, 1858, as it stood, for.....................................$6,500 00
The amount then due to Hogan, according to the terms of the contract with Chase
was, (for the lot,).................. $5,000 00
Interest 1 year, 8 mos. and 13 days, .... 595 97
Amount advanced by Hogan,.......... 850 00
Interest (calculated) from April 17, 1857,
to June 1, 1858,................... 66 60
---$6,512 57
It was sold to Mee for less than the sum due to Hogan.
I see nothing inequitable, or that can operate prejudicially to Chase, by holding that Hogan is competent to purchase at auction sale, when a fair and regular sale is made.
To allow him to do so, adds one to the number of competent bidders. If the bids by third persons amount to more than enough to pay the sum due to him; any increased bid made by himself, is for the benefit of Chase. So too, if no one will bid anything, because unwilling to take the lot and the unfinished building upon it at a price which will pay him, the purchase of it by himself, is still a purchase more beneficial to Chase, than any other person can be induced to make.
«Therefore, to allow Hogan to bid at a regular and fair auction sale, cannot be prejudicial to Chase, while to prohibit it, may of itself render a sale in the mode agreed upon impossible, and thus defeat the clear intent of the parties, and one of the inducements to' the contract.
It is a case in which the owner of land agrees to sell and convey it upon certain conditions, and to furnish means to the person contracting to buy it, to build upon it; and as an inducement to such contract, and as part of its terms, the parties agree that if there be a failure of the person contracting to buy, to do such acts as will entitle him to a conveyance, instead of absolutely forfeiting all right to compensation for the improvements he may have made; the other may sell the property in which the two are thus interested, either at public or private sale.
If no third person will purchase it at either a public or private sale, and pay the sum due to the owner of the land, what is he to do? Must he institute a suit and obtain a judgment for a judicial *450 sale and thus get the privilege of becoming a purchaser ? Must he incur the expenses of such a proceeding, with no chances of being reimbursed, except such as may result from a judgment against his irresponsible vendee ?
And is the vendee not only to lose the advantage which he may derive from the vendor’s higher bids, as competent and legal bids, but is he to be at liberty to say; the contract cannot be terminated in the mode we have provided, if no one but yourself will take the property for the amount due to you?
If Hogan had been unable to find a purchaser at public or private sale who would bid the sum due to him, and for that reason had sought by action a judicial sale, there can be no doubt that he would be allowed by the Court to bid at such sale.
It may be answered, I am aware, that such a sale would not be made by him, or by an auctioneer employed by him, but by an officer of the Court. And it may be urged, that if no one at either a public or private sale, will purchase the property at a price which will pay Hogan, or for a sum which he is willing to accept; that such a contingency was not contemplated by the parties, and therefore has not been provided for.
And if it be conceded, as I think it must be, that the relation between the parties was such that he could not sell to himself at private sale; then there is much force in the objection that he cannot sell to himself at auction, through an auctioneer employed by him, to conduct such sale.
That in making the sale, he is acting for Chase as well as for himself, and is selling the interest and rights of Chase as well as his own.
If it be a clear proposition that Hogan had a duty to perform in relation to the interest of Chase, in the contract in question, which is inconsistent with the character of a purchaser on his own account and for his individual use; then it is true that his purchase at the auction sale, did not divest the interest of Chase. (9 Paige, 237, 241; 4 Kent’s Com., 438.)
The sale to J. B. Mee on the 1st of June, 1858, would not of itself divest the interest of Chase, for the reason that no notice was given to Chase of an intention to sell at private sale. The contract, while.it authorized Hogan “ to sell at public or private *451 sale ” declares, that “ the said Hogan is, however, to give said Chase ten days’ notice in writing of his intention to make such sale.”
Conceding that Hogan, after having made an ineffectual sale at auction, might subsequently sell at private sale, still he would be required to give to Chase ten days’ notice in writing of his intention to sell at private sale.
Thus Chase would have the opportunity to seek purchasers, and send them to Hogan, which privilege might be valuable in its results, whereas if the sale were to be at auction, .he might seek protection in attempting to procure the attendance of bidders, and thus secure a sale at the most favorable price that could be procured.
Assuming that the purchase by Hogan did not divest the interest of Chase, it would be the privilege of the latter to claim the benefit of the sale to Mee. (Hawley v. Cramer, 4 Cow., 717.)
To that, Hogan, probably, would not object if he could, as that sale did not produce enough to satisfy the amount due to him from Chase.
But assuming that Chase is not bound to abide by the terms of that sale, no matter that it may have been made in perfect good faith; still he is not entitled to any favor, and must be limited to his strict equitable rights.
The relief prayed, that the contract should be declared to be in force, and the plaintiff be permitted to execute it; it was properly held, that the plaintiff was not entitled to. (Hatch v. Cobb, 4 John. Ch. R., 559; Benedict v. Lynch, 1 id., 870.)
The Court, at Special Term, held it to be equitable to credit the plaintiff with “ the amount ” of the materials furnished to, and of the labor performed on, the building, and that there should be charged against it, only the advances made by Hogan.
And it so held, although it found as a fact, that intermediate the time when the plaintiff abandoned his work and the time of the sale to Mee, the building sustained damages to the amount of over one thousand dollars, by reason of exposure in its partially finished state, to the action of the elements.
Although this damage was caused by the plaintiff’s violation of his own contract, and without any fault of the defendant, the latter instead of the plaintiff is made to bear this loss. This we regard as clearly inequitable.
*452 The credit given to Chase by the accounting, as ordered, was to the extent of the value of the materials furnished and labor expended, without reference to the question, what was the value of the structure as it stood, which these materials and this labor had produced.
The true equitable rule is, to credit Chase with the value of the premises with the building on it, in the condition that it was when the sale was made to Mee, and to charge him with the price he agreed to pay for the lot with interest from the date of the contract to the time of such sale, and with the amount of Hogan’s advances and interest from the time they were made up to the day of such sale.
If the account, as thus stated, leaves a balance in favor of the plaintiff, Hogan should pay such balance. But if a balance would be due to Hogan, he should have judgment for it.
Had Chase performed his contract, the defendant, by its terms, would have been entitled to a bond of the plaintiff, of the same date as the contract, conditioned to pay $5,000, the price of the lot, in three years, with interest thereon semi-annually, and also to pay the advances with interest at the same dates.
Hogan should not be placed, by the fault of the plaintiff, in a worse condition than if the latter had performed his contract. The plaintiff should not make a profit out of his own neglect of duty and the violation of his own contract.
The judgment should be reversed, with costs to the appellant to abide the event, and a new trial be ordered.
Ordered accordingly.